CHRISTOPHER P. BURKE, ESQ.                    ECF Filed on 7/25/13
Nevada Bar No.: 004093
*atty@cburke.lvcoxmail.com*
218 S. Maryland Pkwy.
Las Vegas, Nevada 89101
(702) 385-7987
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: BK-S-11-26893-MKN |
| | ) | |
| **LAWRENCE A. GRIHALVA,** | ) | Chapter 7 |
| | ) | |
| | ) | Date:  8/28/2013 |
| _____ Debtor. | ) | Time:  2:30 p.m. |

**MOTION TO REOPEN CHAPTER 7 UNDER 11 U.S.C. §350 and F.R.B.P. 5010 TO HOLD CREDITORS IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. §524(a)(2) AND FOR VIOLATING THE FAIR DEBT COLLECTION PRACTICE ACT AND THE NEVADA CONSUMER PROTECTION LAWS.**

COME NOW, Debtor, LAWRENCE A. GRIHALVA ("Debtor" or "Grihalva") by and through his attorney, CHRISTOPHER P. BURKE, ESQ.,and respectfully request this Court to Reopen Debtors Chapter 7 under 11 U.S.C. §350 and F.R.B.P. 5010 and to Hold Creditor, Nationstar Mortgage, LLC, ("Nationstar") and its attorney,  McCarthy and Holthus, LLP., ("McCarthy and Holthus") in Contempt and Sanction each of them for their Violation of the Discharge Injunction. 11 U.S.C. §524(a)(2). In addition, all should be sanctioned for violating the Fair Debt Collection Practice Act ("F.D.C.P.A") 15 U.S.C. §1692 and the Nevada consumer protection statutes in NRS §598 and §41.600

Dated this 25 day of July, 2013.

                                   /S/ CHRISTOPHER P. BURKE, ESQ.
                                     CHRISTOPHER P. BURKE, ESQ.
                                     Nevada Bar, No,: 004093
                                     218 S. Maryland Pkwy.
                                     Las Vegas, NV 89101

# I
## Law

On motion by the debtor, a case may be reopened in the court in which such case was closed to administer assets, accord relief to the debtor or for other cause. 11 U.S.C. USC §350(b) and Fed.R.Bankr.P. 5010. A discharge in a case operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. 11 U.S.C. §524(a)(2).

# II
## Statement of Facts

Grihalva filed a chapter 13 on July 11, 2008, case No. 08-17519-MKN. That was dismissed on July 27, 2011. But during that case, Aurora Loan Services, LLC ("Aurora"), through McCarthy and Holthus, participated extensively by filing a proof of claim, motion to lift stay, two objections to confirmation and even defended an adversary. (Dkt#65, 89, 134, 151, 181)

After dismissal, Grihalva then filed this chapter 7 on October 27, 2011.  Aurora Loan Services, LLC ("Aurora") was listed on Schedule D as a secured credit for a home located at 3222 E. Viking Rd. Las Vegas, NV 89121 ("Viking Road."). In addition, Aurora's attorney McCarthy and Holthus was also listed. Both, were noticed of his 341 (Dkt.#11).

In Grihalva's chapter 7, McCarthy and Holthus also represented another secured creditor.  The Bank of Mellon New York ("Bank of Mellon"). During the case, Bank of Mellon, through McCarthy and Holthus  filed an opposition to Grihalva's motion to continue the stay. (Dkt.# 29).  McCarthy and Holthus  then filed, a motion to lift stay, for the Bank of Mellon on property located at 56 E. Serene unit 3-120 Las Vegas, Nevada. (Dkt.# 40)  Then Aurora, also through its attorney McCarthy and Holthus, filed a motion to lift stay on his Viking Road. property. (Dkt. #44 ) On February 3, 2012 Grihalva received his discharge. Both Aurora and McCarthy and Holthus were noticed of it. (Dkt # 61).

More than one year later, on April 19, 2013 Nationstar, who now held the loan on

Viking Road sent Grihalva a letter regarding its loan. Nationstar's letter states, "you must pay the full amount of the default on this loan by the thirty-fifth (35th) day from the date of this letter...". (Ex. 'A') Though later on in its letter, Nationstar attempts to disclaim its action *if* a bankruptcy was filed.

Then on or about June 27, 2013 Nationstar, through McCarthy and Holthus, LLP filed suit against Grihalva in Clark Country District Court, case No. A-13-684232-C. ("District Court case"). That lawsuit states, "Plaintiff [Nationstar] prays for judgment ... Against Defendant, Laurence Grihalva, for the minimum sum of $584,857.06, plus all pre and post-filing costs and attorney's fees, and interest from December 1, 2007 until paid in full...". (Ex. 'B')

This caused Grihalva, a private pilot, to take off from a job in New York, and fly to Las Vegas, to file a response to the lawsuit. (Ex. 'C') In the process, losing several days of work, not to mention the stress and emotional toll its taken.

### III
### Issue

Absent a reaffirmation agreement, a bankruptcy discharge elimates a debtors personal liability on a secured debt. Here, after Grihalva received his discharge, and despite its attorney, McCarthy and Holthus having lifted the stay, Nationstar still sent him a collection letter. Then filed a lawsuit seeking to hold him personally liable for its debt on his home loan. Shouldn't Nationstar, and McCarthy and Holthus, be sanctioned for violating the discharge injunction?

### IV
### Argument
### A
### Both Nationstar and McCarthy and Holthus should be held in contempt for Violation of the discharge injunction

### 1. Courts inherent contempt authority

Article III courts have an "inherent authority" to sanction "bad faith" or "willful misconduct", even in the absence of express statutory authority to do so. *Chambers v.*

*NASCO, Inc.,* 501 U.S.32, 42-47 (1991). Therefore, bankruptcy courts have inherent civil contempt authority independent of any statute or rule. *Jove Eng'g, Inc., v. IRS,* 92 F.3d 1539, 1553 (11ᵗʰ Cir. 1996). Pursuant to its inherent civil contempt authority, bankruptcy courts may enforce its orders, *see id.; In re Matthews,* 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995), and issue sanctions for noncompliance, *Bessette v. Avco Fin. Services, Inc.,* 230 F.3d 439, 445 (1ˢᵗ Cir. 2000).

The discharge injunction contained in 11 U.S.C. §524 operate as an order of the court. *Matthews* at 598. A bankruptcy court may therefore use its inherent civil contempt authority to issue sanctions against creditors violating the automatic stay and discharge injunction, which sanctions may include compensatory damages. *See, e.g., In re Wallace,* 2011 WL 1335822 at *5 (Bankr. M.D. Fla. April 5, 2011) (stating that "[i]t is well settled that this Court has the inherent power to award compensatory damages for willful violations of the automatic stay as this falls within the ambit of the bankruptcy court's civil contempt power."); *In re Hardy,* 97 F.3d 1384, 1389 (11ᵗʰ Cir. 1996)(noting that "the modern trend is for courts to award actual damages for violation of §524 based on the inherent contempt power of the court.").

Here, both Nationstar and McCarthy and Holthus, knew of Grihalva's bankruptcy and discharge. But both still seek to hold him personally liable, one by letter, and both in its District Court complaint. There is no excuse for McCarthy and Holthus action in filing this suit. Especially after filing, at least four pleadings in his bankruptcy case. This is a clear violation of §524(a)(2) and is deserving of sanctions.

**2.Courts have contempt authority under Section 105.**

In addition to its inherent civil contempt powers, bankruptcy courts have statutory civil contempt authority under 11 U.S.C. §105(a) to enforce the automatic stay and discharge provisions of the Bankruptcy Code. *See Bessette,* 230 F.3d at 445; *see also In re Fatsis,* 405 B.R. 1, 7 (B.A.P. 1ˢᵗ Cir. 2009). Section 105(a) provides for the issuance of "any order,

4

1  process, or judgment that is necessary or appropriate to carry out the provisions of this

2  title."

3     The Ninth Circuit has held that Section 524(a) may be enforced by the court's

4  contempt power under section 105(a). See *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502,

5  509 (9th Cir. 2002); see also *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir. 1996)

6  (noting that "[t]here can be little doubt that bankruptcy courts have the inherent power to

7  sanction vexatious conduct presented before the court" as recognized by the statutory grant

8  of power to the bankruptcy courts under 11 U.S.C. §105(a)). "The standard for finding a

9  party in civil contempt is well settled: The moving party has the burden of showing by clear

10  and convincing evidence that the contemnors violated a specific and definite order of the

11  court. The burden then shifts to the contemnors to demonstrate why they were unable to

12  comply." *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999).

13     A party who knowingly violates the discharge injunction can be held in contempt

14  under § 105(a) of the Bankruptcy Code. *Espinosa v. United Student Aid Funds, Inc.,* 553

15  F.3d 1193, fn. 7 (9th Cir. 2008). Proof of a Knowing violation requires only proof that the

16  creditor (1) knew the discharge injunction was applicable and (2) intended the actions

17  which violated the injunction. *Bennett,* 298 F.3d at 1069; (citing *In re Hardy,* 97 F.3d at

18  1388-89). Therefore, the bankruptcy court clearly has discretion to impose sanctions under

19  section 105(a). *Bennett* at 1069. The focus "is not on the subjective beliefs or intent of the

20  contemnors in complying with the order, but whether in fact their conduct complied with

21  the order at issue." *In re Dyer* 322 F.3d 1178, 1191 (9th Cir. 2003), citing *Hardy* at 1390

22  (regarding stay violation). "Because civil contempt serves a remedial purpose it matters not

23  with what intent the defendant did the prohibited act." *Dyer* at 1191. "[T]he threshold

24  questions regarding the propriety of an award turns *not* on a finding of 'bad faith' or

25  subjective intent, but rather on a finding of willfulness' ". *Id* at 1191.

26     A "willful violation" does not require a specific intent. Rather, the statute provides

27  for damages upon a finding that the defendant knew of the bankruptcy and that the

28                                        5

defendant's actions were intentional. *In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir. 1992) (involving the automatic stay). "If the Bankruptcy Court finds that the creditor willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [Wik] whole." *Ibid.;* "Where the discharge injunction was willfully violated courts award debtor's actual damages, punitive damages and attorneys' fees." *Ibid.,* citing 2 Collier Bankruptcy Manual (3rd Rev. Ed.) ¶ 524.02 [2][c].

Thus, the Bankruptcy Court can sanction both Nationstar and McCarthy and Holthus under its civil contempt authority.

**3. Damages and Attorneys Fees**

Bankruptcy courts may use their civil contempt authority under §105(a) to award debtor compensatory monetary damages for violations of the automatic stay. *See Jove Eng'g, Inc.,* 92 F.3d at 1554 (stating that for automatic stay violations, courts generally award damages under § 105). And they may also award debtors compensatory monetary damages, including actual damages, pursuant to § 105(a) for violations of the discharge injunction. See *In re Meyers,* 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006); *In re Perviz,* 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003) (nothing that "most bankruptcy courts, when faced with a willful violation of the discharge injunction, allow the debtor an award of actual damages plus attorney fees."); see also *In re Distad,* 392 B.R. 482, 487 (Bankr. D. Utah 2008) (stating the court has statutory contempt authority under § 105(a) to award monetary relief for violations of the discharge injunction).

"[B]ankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages when creditors have engaged in conduct that violates § 524." *Bessette* at 445. See *In re Harris,* 312 B.R. 591 (N.D. Miss. 2004); *In re Sanchez,* 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Section 105(a) gave court power to sanction creditor charging undisclosed and improper fees); *In re Rizzo Cheverier,* 364 B.R. 532 (Bankr. S.D.NY 2007).

The Supreme Court has held, civil contempt orders serve either or both of two

purposes: (1) to compel or coerce obedience of court order; and (2) to compensate parties for losses resulting from the contemptor's non-compliance with a court order. *United State v. United Mine Workers of America,* 330 U.S. 258, 303-04 (1947).

Creditors have been found to have violated the discharge injunctive for various acts. See *In re Adrus,* 189 B.R. 413 (N.D. Ill. 1995)(calling); *In re Burke* 200 B.R. 282 (Bankr. S.D. Ga. 1996)(Collection letter). As a consequence, debtors have received actual damages, emotional distress damages and attorney's fees.  See *In re Curtis,* 322 B.R. 470 (Bankr.D.Mass 2005)(debtor awarded $15,000.00 emotional distress damages and $30,000.00 punitive damages); *In re Atkins,* 279 B.R. 639 (Bankr.N.D.N.Y. 2002)($30,000.00 emotional distress); *In re Gervin,* 337 B.R. 854, 864 (Bankr.W.D. Tex.2005)($25,000.00 emotional distress damages); *In re Goodfellow,* 298 B.R. 358 (Bankr. N.D. IA.2003)(debtor awarded $5,000.00 actual and $5,000.00 punitive damages); *In re Faust,* 270 B.R. 310 (Bankr.N.D.Ga. 1998). *In re McCormak* 203 B.R. 521 (Bankr. D.N.H. 1996)(mortgage bank held liable for $10,000.00 in punitive damages). These are normal civil contempt sanctions. *In re National Gypsum,* 118 F.3d 1056 (5th Cir. 1997); see also 11 U.S.C. §105(a). Since the letters and correspondents seek to collect from the Barrons, they are in contempt. 11 U.S.C §524(a)(2).

"In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complaint losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions. Thus, make-whole relief is a commonplace sanction in civil contempt. So too are. . . attorney's fees and cost". *Goya Foods, Inc. v. Wallach Mgmt. Co.* 290 F.3d 63, 78 (1st Cir. 2002). "[D]amage awards are both necessary and appropriate in the context of contempt for violation of discharge injunctions". *Gervin* at 858.

"Without the willingness of aggrieved debtors to prosecute violations of the discharge injunction of section 524(a)(2), such violations would go unchecked by the court. The Code has as one of its underlying purposes providing a fresh start to a discharge debtor." *In re*

7

*McClure,* 420 B.R. 655, 664 (Bankr. N.D. Tex. 2009), (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) and *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

"If violation of the discharge injunction go unpunished, creditors will lack the necessary incentive to avoid violating the law, and underlying purpose of the Code with be undermined. In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded a actual damages to compensate them for the time and effort they expend in the process." *McClure* at 664, "Should creditors feel safe in ignoring the discharge injunction, some debtors, especially if not represented - . . . may be intimidated into paying discharged debts." *Id* at 664. A Debtor shouldn't be discouraged from seeking to enforce her rights. And, in fact should be compensated when those rights are violated, as has happened here.

**B**
**Nationstar and McCarthly and Holthus have also violated the FDCPA and Nevada consumer protection statutes.**

Alternatively, Grihalva seeks redress because the parties violated the. "Fair Debt Collection Practice ACT" ("FDCPA"). The FDCPA was enacted to regulate the collection of debts. Attorneys are included amongst those it covers. *Heintz  v. Jenkins*, 514 U.S. 291 (1991) ("The Act does apply to lawyers engaged in litigation...").

Any attempt to collect, on an uncollectible debt violates the FDCPA. 15 U.S.C. §1692e (2)(A). A violation entitles a debtor to actual damages, statutory damages and attorneys fees. 15 U.S.C. §1692k (a)(2)(A). See *McCollough v. Johnson, Rodenburg & Lavinger, LLC.* 637  F.3d  939 (9th Cir. 2011) ($1,000 statutory damages, $250,000 emotional distress damages and $60,000 in punitive damages plus attorneys fees); *Ross v. RJM Acquisitions Funding, LLC* 480 F.3d 493 (7th Cir. 2007). In turn, such a violation also triggers  Nevada's own state consumer protection laws. NRS §41.600 (1), (2) and (3), section §598.0923(3) and (4).

# V
## Conclusion

This case should be reopened. And Grihalva should be awarded damages, costs and fees because of both Nationstar and McCarthy and Holthus's actions.

WHEREFORE, Debtor respectfully requests an order,

1. Reopening Grihalva's case for the purpose of allowing Grihalva's Motion for Contempt for Violation of the Discharge Injunction to go forward;

2. Reimbursing him the fee to reopen of $260;

3. Allowing Sanctions of $ 10,000 each against both Nationstar, and McCarthy and Holthus;

4. Allowing Debtor actual damages, including his loss of wages of $2,550, to determined against both Nationstar and McCarthy and Holthus at an evidentiary hearing;

5. Allowing attorney fees of $ 3,000[1] against both Nationstar and McCarthy and Holthus;

6. Requiring Nationstar to cease its lawsuit against Grihalva personally.

7. Alternatively, holding that both Nationstar and McCarthy and Holthus both violated the F.D.C.P.A. and each should pay actual damages, statutory damages and attorneys fees.

.        .        .        .

.        .        .        .

.        .        .        .

---

[1] Christopher P. Burke, Esq. will supplement this motion with a declaration for his attorney fees.

8. Holding that both Nationstar and McCarthy and Holthus, have violated Nevada's consumer protection statutes. See NR S 598.0915 et al. and he is entitled to actual damages, statutory damages and attorney fees against both.

9. Any other relief deemed just and proper.


Dated, this 25th day of July, 2013

RESPECTFULLY SUBMITTED:


 /S/ CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
218 S. Maryland Pkwy.
Las Vegas, NV 89101
Attorney for Debtor for